IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUN 03 2020
JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

CAROLE DENISE BOLES                                                              PLAINTIFF

VS.                          NO. 4:20-cv-710-KGB

LINDSEY MANAGEMENT CO. INC,                                              DEFENDANTS
THE LINKS AT CADRON VALLEY APARTMENTS
MANAGEMENT COMPANY, INC., and
CHRIS DERMANOUELIAN

This case assigned to District Judge Baker
and to Magistrate Judge Deere

## COMPLAINT

Plaintiff, Carole Denise Boles, by and through her attorney Laura L. Calhoun and Scott Richardson, and state for her Complaint against Defendants, states as follows:

### I. RESIDENCY & PARTIES

1.   At the time of the events material to this Complaint, Plaintiff Carol Denise Boles was a citizen and resident of Faulkner County, Arkansas.

2.   At all times relevant to this Complaint, Defendant Lindsey Management Co. Inc.'s principal place of business was located in Benton County, Arkansas.

3.   Defendant Lindsey Management Co. provides management services supporting the operations at a number of apartment complexes including The Links at Cadron Valley where Ms. Boles was employed.

4.   Defendant, Lindsey Management Co. Inc., may be served with process through its registered agent, CT Corporation System, 124 West Capitol Avenue, Suite

1

1900, Little Rock, Arkansas, 72201, or through the general manager at the company's principal place of business.

5. At all times relevant to this Complaint, Defendant, The Links at Cadron Valley Apartments, Inc.'s principal place of business was located in Faulkner County, Arkansas.

6. Defendant, The Links at Cadron Valley, Inc., is the corporation owning an eponymous apartment complex in Faulkner County, Arkansas where Ms. Boles was employed.

7. Defendant, the Links at Cadron Valley Apartments, may be served with process through its registered agent, CT Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas, 72201, or through the general manager at the company's principal place of business.

## II. JURISDICTION & VENUE

8. This is an action for declaratory relief, injunctive relief, and damages to redress deprivation of rights secured to the Plaintiffs. The Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000(e) *et seq.* as amended and title VII of the Civil Rights Act of 1964. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

9. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred in the Eastern District of Arkansas.

10. Hereinafter Defendants Lindsey Management Co., Inc. and The Links at Cadron Valley Apartments Management Co, Inc., and will be referred to as "The Links".

### III. BASIC PREMISE

11. This is a sexual harassment, disability discrimination, and retaliation case arising from Plaintiffs' employment at The Links at Cadron Valley, Inc. and/or Lindsey Management Company, Inc.

### IV. FACTS

12. In October 2019, Plaintiff was hired as a leasing consultant at an apartment complex owned by the Links defendants known as The Links located at 3400 Irbing Drive, Conway, Building A, Conway, Arkansas 72034.

13. At all times relevant to this Complaint, Plaintiff performed her duties properly and met the expectations and requirements of her employer(s) and supervisors.

14. Upon Plaintiff's employment at The Links, Chris Dermanouelian and Teresa Searcy were the property managers and held supervisory authority over Boles.

15. Teresa Searcy was also the long-time sexual partner of Dermanouelian. Meaning the two had been living together and in a dating relationship for a number of years.

16. Other employees of Defendants that held supervisory authority over Plaintiff included Betty Fox (head of human resources) and Deann Huffman (Regional Manager)

17. Beginning in November 2019, Dermanoulian began making sexually explicit and derogatory comments towards Plaintiff because of her gender.

18. Dermanoulian fostered a sexualized atmosphere at The Links and made harassing comments towards Plaintiff and other female employees because of their gender.

19. Plaintiff was treated differently from similarly situated male employees because of her gender and sex. In particular, male employees were not required to endure the sexual advances and constant sexually explicit and derogatory comments of Dermanoulian.

20. Plaintiff was subjected to repeated comments about her body parts from her supervisor, Dermanoulian.

21. Plaintiff eventually became so afraid that she asked other employees to sit with her during her shift.

22. Plaintiff complained about these comments to her supervisors, but nothing was done. She made her first complaint on February 7, 2020, and the harassment continued to occur after said complaint.

23. Dermanoulian regularly harassed Plaintiff based on her gender and sex with a barrage of comments on Plaintiff's body parts, comments of his own body parts, and asking her to send inappropriate pictures to him.

4

24.     Dermanoulian would often linger around Plaintiff's workspace when his job did not require him to do so. He repeatedly came into her office during the late evening when his shift was over.

25.     At least twice, Dermanoulian's gender discrimination turned physical towards Plaintiff.

26.     On one occasion, Dermanoulian came into Plaintiff's apartment unannounced while she was in her pajamas. Dermanoulian asked her if "those were her no nookie pajamas." Dermanoulian said he was in her apartment to change her lock. Boles never requested a lock change and one was not needed.

27.     On another occasion, Plaintiff was drinking out of a cup with a red straw. Dermanoulian told Plaintiff that his male body part is above average in size and that "he would turn her brighter red than that straw he's so big." He also told her "you have not had anything until you've had me" and then asked Boles why she was blushing.

28.     On February 2, 2019, Dermanoulian brought whisky to the job, offered it to Boles, and told her that he wanted to see how "f-ed" up he could get her. Boles refused and let him know that she had no interest in his offer to get drunk on the job because, among other things, she knew he wanted to use it as an opportunity to proposition her for sex. Boles also rejected the offer because drinking alcoholic beverages on the job was forbidden.  Undeterred, Dermanoulian also requested that she send him pictures on the social media service Snap Chat.

29. In the beginning of February 2020, Dermanoulian asked Plaintiff if her boyfriend performs oral sex on her and stated that if he does not that she needs Dermanoulian to do so.

30. In the beginning of February 2020, Dermanoulian would often bring his dog into Plaintiff's workplace. On one occasion, his dog was sniffing Plaintiff and Dermanoulian stated that he wished he could be a dog "so he could sniff women's asses". He also told Plaintiff that she had a "stank ass".

31. Also, in the beginning of February 2020, Dermanoulian followed Plaintiff into the gym and placed his hands on her shoulders. Once inside, he told her "I'm going upstairs to think of you and my next move." This terrified Plaintiff and she knew she needed to report this to her supervisors. On February 7, 2020, Boles emailed the head of human resources, Betty Fox and her regional manager, Deann Huffman regarding the harassment she was enduring at the workplace. She received no response. Plaintiff was forced to continue working under such terrible conditions.

32. After she reported this to her supervisors, in the middle of February 2020, Dermanoulian told Plaintiff that his favorite pie is "hairy pie". Dermanoulian intended this to be an offer for oral sex he would perform on Boles. Dermanoulian knew that his offer was unwanted, offensive, and harassing to Boles. Boles made a gagging sound in response. Dermanoulian, knowing this sound expressed rejection and disgust at his offer, said "I like that sound." He also stated that he did not care that Boles was offended by his harassment of her but that he "liked it pink and juicy," referring to her female body parts. Dermanoulian also asked if Boles would meet him

6

somewhere on that Friday night and she declined. On that same night, he visited on three separate occasions. He later apologized for making the inappropriate comments but then inappropriately grabbed and squeezed Plaintiff's shoulder. On that same night, Dermanoulian also told Plaintiff that he and Teresa Searcy do not have a sex life and that he looks at pornography and thinks of Plaintiff when he pleases himself.

33. Also, after reporting this to her supervisors, on February 14, 2020, Dermanoulian told her that she looked tense and that all she needed was a good man to relieve the tension. He then held up his hand and said, "this is what's going to relieve my tension tonight and put me to sleep." He then proceeded to say that he uses his hands often because "it's a no nookie night like every night."

34. On or about February 17, 2020, again after Plaintiff complained to her supervisors, Dermanoulian told her that someone had peed all over the floor and toilet seat. He then stated that the water was deep and cold. Dermanoulian was again making a reference to the size of his male body parts.

35. Thereafter, on or about February 18, 2020, Dermanoulian brought his dogs into Boles' office and had one between his legs. He stated that he "wished he had a big mouth B*tch between his legs all the time."

36. Dermanoulian asked Plaintiff to look up "prince albert" on the computer and said that he had that piercing.

37. On more than one occasion, Dermanoulian has come into Plaintiff's workplace for the sole purpose of harassing her.

38. As stated above, Plaintiff complained to other supervisors about this incident to no avail. The harassment continued unabated.

39. Pursuant to her employment file, Boles was directed that "The only service you have outside of Lindsey is the screening help desk. Other than that, please direct all of your questions or concerns to the appropriate contact at Lindsey and we will be happy to assist you." It further states that questions pertaining to your manager should go to your regional Manager.

40. On or about February 7, 2020, Boles emailed the head of human resources, Betty Fox and her regional manager, Deann Huffman regarding the harassment she was enduring at the workplace. She received no response.

41. On February 10, 2020, Boles called Deann Huffman's cell phone and left a voicemail saying it was urgent. The call was not returned.

42. On February 11, 2020, Boles called Deann Huffman around 4:30 p.m. and there was no answer. She called again on that date around 6:30 p.m. and there was no answer.

43. On February 12, 2020, Boles called Deann Huffman's cell phone on two occasions and sent another email marked "urgent."

44. Boles received no response to any of her emails or calls.

45. On February 13, 14, 15, 16, 17, 2020, Boles sent emails to Deann Huffman and Betty Fox requesting that The Links preserve all videos.

46. Finally, on February 18, 2020, Boles was contacted by human resources and put on paid leave.

47. In other words, Defendants punished Boles and allowed her harasser to remain on the job.

48. On February 20, 2020, Boles requested that she sit down with Human Resources to show them her notes, tell them her story, and let them hear recordings of Dermanoulians's harassment. They never gave her that opportunity.

49. Boles was eventually told that Dermanoulian would remain employed.

50. Plaintiff belongs to a protected group based on her gender.

51. She was subject to unwelcome harassment by her supervisor.

52. The harassment was sexual harassment and gender discrimination.

53. The sexual harassment and gender discrimination of Plaintiff damaged her working conditions, made it more difficult to perform her job duties, caused her embarrassment in front of her customers and co-workers, and adversely impacted her ability to do her job and she was forced to resign.

54. Plaintiff reported the harassment pursuant to Defendant's harassment policy to her supervisors on multiple occasions.

55. Nothing was done by any of Plaintiffs' supervisors to stop the harassment or to remove Dermanoulian from his position.

56. Plaintiff eventually quit her employment because the harassment and discrimination. Defendants inaction in the face of Dermanoulian's incessant harassment left Boles with only two options: to continue to endure Dermanoulian's unchecked harassment or quit her job.

## V. CAUSE OF ACTION – TITLE VII SEXUAL HARASSMENT

57. Title VII prohibits employers from discriminating against employees based on sex that creates a hostile or abusive working environment. 42 U.S.C. § 2000e-2.

58. Plaintiff, Carole Denise Boles, as a female belongs to a protected group.

59. She was subjected to unwelcome and offensive harassment by her male office manager as described above.

60. The harassment was because of Plaintiff's sex, female.

61. The harassment affected the terms, conditions, and privileges of Plaintiff's employment including, but not limited to, the following:

   a. As an employee, Plaintiff was required to be in the same location as her harasser and so was deprived of a safe working environment;

   b. Through offensive touching the harasser violated Plaintiff's bodily integrity and personal privacy while Plaintiff was at work;

   c. Plaintiff's supervisors' failure to address the harassment in a timely way elevated the harassment to a term or condition of her employment.

62. Defendants failed to train their employees against sexually harassing co-workers.

63. Defendants failed to train Plaintiff in her rights and how to register complaints of sexual harassment, including sexual harassment by supervisors, in their workplace.

64. Thus, Defendants failed to exercise reasonable care to prevent sexual harassment in the workplace.

65. When Plaintiff complained about the sexual harassment to her supervisors, Defendants failed to correct the harassing behavior.

66. Accordingly, Defendants violated Title VII.

67. Plaintiff filed a timely charge of discrimination with the EEOC based upon Title VII sex and gender discrimination and retaliation. EEOC issued "Right to Sue" letters on March 4, 2020.

68. As reflected on the attached page, Plaintiff's factual allegations contained herein are verified by Plaintiff as being true and correct to the best of her knowledge and belief.

## V. CAUSE OF ACTION – TITLE VII GENDER DISCRIMINATION

69. Plaintiff is a member of a protected group: females.

70. She was qualified to perform the job she had while at The Links.

71. She suffered adverse employment actions while performing her job, including, but not limited to, the following:

   a. Plaintiff was subjected to unlawful sexual harassment that the management refused to correct;

   b. Plaintiff was forced to quit in order to avoid the harassment.

72. The adverse employment actions were the result of unlawful gender discrimination.

## V. CAUSE OF ACTION – TITLE VII RETALIATION

73. As explained above, Defendant forced Plaintiff to quit and took other adverse employment actions in retaliation for Plaintiff exercising her rights under Title VII.

74. Plaintiff engaged in protected conduct, namely reporting sexual harassment and gender discrimination in the workplace.

75. Prior to her resignation, Plaintiff was also a resident of The Links. After she complained of sexual harassment, Defendants forced her to vacate her dwelling immediately. At the time Plaintiff had been diagnosed by her doctor with a presumptively positive case of coronavirus. Plaintiff was told by her doctor to quarantine because of exposure to and expected diagnosis of Covid-19. Defendants would not allow her to remain living at The Links and risked Plaintiff and the community's health as a result.

76. Plaintiff did not receive her entire deposit back from The Links to which she was entitled.

77. These things happened because of Plaintiff's engaging in protected activity.

## VI. CAUSE OF ACTION – ARKANSAS CIVIL RIGHTS ACT

78. Defendant's actions and omissions outlined above constitute sexual harassment and gender discrimination prohibited by the Arkansas Civil Rights Act (ACRA). Ark. Code Ann. § 16-123-101, et seq.

79. Defendant's actions and omissions outlined above constitute retaliation for engaging in protected activity in violation of the ACRA.

## VII. INJURIES AND COMPENSATORY DAMAGES

80. Plaintiff sustained injuries as a result of the Defendants' violation of their rights under Title VII and the ACRA.

81. Plaintiff's injuries include both economic and emotional damages in that Plaintiff lost pay, suffered abuse at the hands of her harasser, and was forced to endure the stress of the loss of her job when she had done nothing wrong.

82. Plaintiff is entitled to the following damages:

   a. Back pay, front pay, lost benefits, and interest from loss of her employment due to Defendants' violation of Plaintiff's civil rights;

   b. Any and all compensatory damages as provided by law;

   c. Any and all punitive damages as provided by law;

   d. All costs and attorneys' fees associated with this action;

   e. The value of any earnings, profits, or salary lost in the past and that are reasonably certain to be lost in the future.

   f. Plaintiff is entitled to declaratory and injunctive relief as follows: a finding that the Defendants' conduct was in violation of Title VII and the Arkansas Civil Rights Act;

   g. Plaintiff would be so afraid during her shifts that she would cry and shake when Dermanoulian would walk into her office. Due to the stress she lost thirty pounds in approximately four months. She eventually

sought medical treatment for anxiety and depression. Plaintiff is entitled to damages from her medical bills incurred as well as pain and suffering.

83. Plaintiff requests an award of all other relief to which they may be entitled, including but not limited to the costs of this action, expenses, attorney's fees, pre-judgment and post-judgment interest at the maximum rate allowed by law, and all other damages and relief to which Plaintiffs are entitled to under the law.

## VIII. JURY TRIAL DEMAND

84. Plaintiff hereby demand a trial by jury.

Respectfully submitted,

By: /s/

Laura L. Calhoun (2011134)
**Hodge, Calhoun, Giattina, PLLC**
711 West Third Street
Little Rock, Arkansas 72201
laura@hcglawoffice.com

and

Scott P. Richardson #2001208
**McDaniel, Wolff, & Benca PLLC**
1307 West 4th St.
Little Rock, AR 72201
o 501-954-8000
fax 866-419-1601
scott@mwbfirm.com

## VERIFICATION

STATE OF ARKANSAS )
)ss.
COUNTY OF Pulaski )

I, Carole Denise Boles, hereby state that the facts as set forth in the foregoing pleading are true and correct to the best of my knowledge, information and belief.

*Carole Denise Boles*
Carole Denise Boles

SUBSCRIBED AND SWORN to before me, a Notary Public, on this 3rd day of June, 2020.

_____
Notary Public

```
TIMOTHY J GIATTINA
Pulaski County
Commission Number 12700787
Notary Public - Arkansas
My Commission Expires May 05, 2027
```

**Page 1 of 1**